1  Victoria L. Nelson, Esq. (NV Bar No. 5436)
   Email: vnelson@nevadafirm.com
2  Jacob L. Houmand, Esq. (NV Bar No. 12781)
   Email: jhoumand@nevadafirm.com
3  COTTON, DRIGGS, WALCH,
   HOLLEY, WOLOSON & THOMPSON
4  400 South Fourth Street, Third Floor
   Las Vegas, Nevada 89101
5  Telephone:    702/791-0308
   Facsimile:    702/791-1912
6
7  *Attorneys for Shelley D. Krohn, Chapter 7 Trustee*

*Electronically Filed On*
*March 8, 2013*

8              **UNITED STATES BANKRUPTCY COURT**
                    **DISTRICT OF NEVADA**
9

10  In re:                                Case No.  BK-S-12-14724-LBR
                                          Chapter    7
    WILLIAM WALTER PLISE, AKA BILL
11  PLISE,

12              Debtor.

13  SHELLEY D. KROHN, CHAPTER 7           Adv. No. BK-S-12-1214-LBR
    TRUSTEE,
14
                Plaintiff,
15
        v.                                <u>**MOTION TO APPROVE COMPROMISE**</u>
16                                        <u>**AND SETTLEMENT PURSUANT TO**</u>
    WILLIAM WALTER PLISE; TENNILLE I.     <u>**FEDERAL RULE OF BANKRUPTCY**</u>
17  PLISE; 13413 SHORE VISTA DRIVE, LLC;  <u>**PROCEDURE 9019**</u>
    OLD TOLL ROAD, LLC; DHLC MORTGAGE,
18  LLC; BERT and SADIE BEDORD; KENNETH
    J. AND MARCIA HILLS PROFIT SHARING    Date of Hearing:      March 19, 2013
19  PLAN; ERIC RUSSELL PETERSON; SHAUN    Time of Hearing:      9:30 a.m.
    CLEM; CRAIG ALAN STOOPS; KOBA         Place: Courtroom No. 1, Third Floor
20  INVESTMENTS, LLC; 5550 LAS VEGAS,            Foley Federal Building
    LLC; DOE individuals 1-10; and ROE           300 Las Vegas Blvd., S.
21  corporations 1-10,                           Las Vegas, NV 89101

22              Defendants.               Judge: Hon. Linda B. Riegle

23

24          SHELLEY D. KROHN, Chapter 7 Trustee in the above-referenced action (the "Trustee"

25  or "Plaintiff") by and through her counsel, the law firm of Cotton, Driggs, Walch, Holley,

26  Woloson & Thompson, and Defendants Tennille I. Plise, 13413 Shore Vista Drive, LLC, Old

27  Toll Road, LLC, Koba Investments, LLC and 5550 Las Vegas, LLC (collectively known as

28
                                    -1-
    09648-01.001/1036575

1  "Defendants"), respectfully move this Court to Approve Compromise and Settlement pursuant to

2  Bankruptcy Rule 9019 ("Motion"), between the Defendants and Plaintiff (collectively, the

3  "Parties") as reflected in the proposed Settlement Agreement.[1]

4      The Parties have reached an agreement to settle Plaintiff's claims against Defendants.

5  The Settlement is memorialized in the Settlement Agreement and Release executed by each of

6  the Parties on or about March 7, 2103 (the "Settlement Agreement"), a true and correct copy of

7  which is attached to the Declaration of Shelley D. Krohn (the "Krohn Declaration") as **Exhibit**

8  **"1"**, which declaration is filed separately and concurrently with this Court as required under

9  Local Rule 9014(c)(2).

10      This Motion is based on the following Memorandum of Points and Authorities and the

11  exhibits attached hereto, the pleadings and papers on file herein, and any argument that may be

12  entertained on the hearing of the Motion.

13      Dated this 8th day of March, 2013.

14

15               **COTTON, DRIGGS, WALCH,**
             **HOLLEY, WOLOSON & THOMPSON**

16

17               */s/ Victoria L. Nelson*
             Victoria L. Nelson, Esq. (SBN 5436)

18               Jacob L. Houmand (SBN 12781)
             400 South Fourth Street, Third Floor

19               Las Vegas, Nevada 89101
             Telephone:702/791-0308

20               Facsimile: 702/791-1912

21               *Attorneys for Shelley D. Krohn, Chapter 7*
             *Trustee*

22

23

24

25

26

27

28

---

[1] The Settlement Agreement does not resolve any claims that were filed by the Trustee that objected to the discharge of William Walter Plise pursuant to 11 U.S.C. § 727.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    STATEMENT OF RELEVANT FACTS

1.    On April 23, 2012, William Walter Plise (the "Debtor") filed his Chapter 7 voluntary petition for relief in the above-referenced matter under Chapter 7 of the United States Bankruptcy Code. [Main Bankruptcy Case, Dkt. No. 1]. See Krohn Declaration.

2.    On April 23, 2012, Shelley D. Krohn was appointed the Chapter 7 Trustee in this matter [Main Bankruptcy Case, Dkt. No. 3]. See Krohn Declaration.

3.    On September 19, 2012, Plaintiff filed a complaint against the Debtor, Tennille Shore Vista, alleging claims for relief for (1) avoidance of fraudulent transfers pursuant to 11 U.S.C. § 544(b); (2) recovery of fraudulent transfers pursuant to 11 U.S.C. § 550; (3) turnover of estate property pursuant to 11 U.S.C. §  542; (4) injunctive relief pursuant to Bankruptcy Rule of Civil Procedure 7065; (5) objection to discharge of Debtor  pursuant to 11 U.S.C. § 727(a)(2)(A); (6) objection to discharge of Debtor pursuant to 11 U.S.C. 727(a)(2)(B); (7) objection to discharge of Debtor pursuant to 11 U.S.C. § 727(a)(3); (8) objection to discharge of Debtor pursuant to 11 U.S.C. § 727(a)(5); and (9) objection to discharge of Debtor pursuant to 11 U.S.C. § 727(a)(6) (the "Complaint") [Adv. Proc. Dkt. No. 1]. See Krohn Declaration.

4.    On September 20, 2012, Plaintiff filed a Motion for Preliminary Injunction preventing the Defendants from transferring, encumbering, or other disposing of the real property located at 13413 Shore Vista Drive, Austin, Texas 78732 (the "Austin Property") [Adv. Proc. Dkt. No. 10]. See Krohn Declaration.

5.    On September 19, 2012, Tennille transferred her interest in the real property located at Lot 5 Mountain Subdivision, Lake City, County of Hinsdale, State of Colorado, 8515 Hinsdale County Road, Colorado 81235 (the "Colorado Property"). See Krohn Declaration.

6.    On October 17, 2012, Plaintiff filed a First Amended Complaint adding claims for avoidance of fraudulent transfer pursuant to 11 U.S.C. § 544(b) against Tennille and Old Toll Road LLC for the transfer of the Colorado Property [Adv. Pro. Dkt. No. 23].   See Krohn Declaration.

…

09648-01.001/1036575

7.    On November 2, 2012, Shore Vista filed an Answer to the First Amended Complaint [Adv. Proc. Dkt. No. 36]. See Krohn Declaration.

8.    Plaintiff subsequently discovered facts giving rise to a claim for relief for fraudulent transfer pursuant to 11 U.S.C. § 544(b) to avoid the first deed of trust on the Austin Property held in favor of DHLC Mortgage, LLC, ("DHLC") Bert and Sadie Bedford, the Kenneth J. and Marcia Hills Profit Sharing Plan, Eric Russell Peterson, Shaun Clem, and Craig Alan Stoops (collectively, the "DHLC Investors"), and the second deed of trust held in favor of Tennille. Plaintiff has also uncovered claims for relief for alter ego against Koba Investments, LLC ("Koba Investments") and 5550 Las Vegas, LLC ("5550 Las Vegas"). See Krohn Declaration.

9.    On November 13, 2012, Plaintiff filed a Motion to Amend the First Amended Complaint in order to assert claims for relief against DHLC, the DHLC Investors, Koba Investments, and 5550 Las Vegas [Adv. Proc. Dkt. No. 57]. See Krohn Declaration.

10.    On December 19, 2012, the Court entered an Order Granting Plaintiff's Motion to Amend the First Amended Complaint [Adv. Proc. Dkt. No. 94]. See Krohn Declaration.

11.    On December 27, 2012, Plaintiff filed a Second Amended Complaint against the Debtor, Tennille, Shore Vista, DHLC, the DHLC Investors, Koba Investments, and 5550 Las Vegas, alleging claims for relief for (1) alter ego; (2) avoidance of fraudulent transfers pursuant to 11 U.S.C. § 544(b); (3) recovery of fraudulent transfers pursuant to 11 U.S.C. § 550; (4) turnover of estate property pursuant to 11 U.S.C. § 542; (5) injunctive relief pursuant to Bankruptcy Rule of Civil Procedure 7065; (6) objection to discharge of Debtor  pursuant to 11 U.S.C. § 727(a)(2)(A); (7) objection to discharge of Debtor pursuant to 11 U.S.C. 727(a)(2)(B); (8) objection to discharge of Debtor pursuant to 11 U.S.C. § 727(a)(3); (9) objection to discharge of Debtor pursuant to 11 U.S.C. § 727(a)(4)(A); and (10) objection to discharge of Debtor pursuant to 11 U.S.C. §  727(a)(4)(D); (11) objection to discharge of Debtor pursuant to 11 U.S.C. § 727(a)(5); and (12) objection to discharge of Debtor pursuant to 11 U.S.C. § 727(a)(6) (the "Second Amended Complaint") [Adv. Proc. Dkt. No. 98]. See Krohn Declaration.

…

09648-01.001/1036575

12.     On January 2, 2013, the Court entered an Order Granting the Motion for Preliminary Injunction [Adv. Proc. Dkt. No. 99]. See Krohn Declaration.

13.     On January 7, 2013, Shore Vista, Koba Investments, and 5550 Las Vegas filed an Answer to the Second Amended Complaint that included a demand for jury trial [Adv. Proc. Dkt. No. 111]. See Krohn Declaration.

14.     On January 7, 2013, the Debtor filed an Answer to the Second Amended Complaint [Adv. Proc. Dkt. No. 112]. See Krohn Declaration.

15.     On January 10, 2013, Shore Vista, Koba Investments, and 5550 Las Vegas filed a Motion for Certification of Adversary Proceeding to the District Court (the "Motion for Certification") [Adv. Proc. Dkt. No. 114]. The Motion for Certification argues that the present adversary proceeding should be transferred to the United States District Court pursuant to Federal Rule of Bankruptcy Procedure ("FRBP") 9015(b) and Local Rule of Bankruptcy Procedure 9015(e). See Krohn Declaration.

16.     On January 10, 2013, Tennille and Old Toll filed an Answer to the Second Amended Complaint that included a demand for jury trial [Adv. Proc. Dkt. No. 115].

17.     On January 11, 2013, Tennille and Old Toll filed a Joinder to the Motion for Certification [Adv. Proc. Dkt. No. 116]. See Krohn Declaration.

18.     On February 13 and 14, 2013, the Parties attended a settlement conference with Judge Herbert Ross in attempt to resolve all issues in the Second Amended Complaint. See Krohn Declaration.

19.     The Trustee resolved the dispute with the Defendants at the settlement conference pursuant to the terms set forth in the Settlement Agreement.

20.     The Parties seek to resolve the outstanding claims and rights of Plaintiff, and to resolve all issues regarding the Complaint brought by Plaintiff against the Defendants. See Krohn Declaration.

21.     The Parties have negotiated and reached the settlement in good faith. See Krohn Declaration.

…

- 5 -

22.  The material terms of the Settlement Agreement are as follows:

i).  In settlement of the claims for relief in the Second Amended Complaint against Shore Vista and Tennille, the Parties agree that the Austin Property will be sold according to the following terms:

   a.  The Austin Property will continue to be listed for sale pursuant to the terms of the exclusive listing agreement entered into between Shore Vista, Delilah Fuentes, and Keller Williams Realty (the "Exclusive Listing Agreement"). If the Austin Property has not sold by the time the Exclusive Listing Agreement expires, the Trustee, in her sole discretion, will have the right to replace Delilah Fuentes and Keller Williams Realty with a real estate agent of her choosing.

   b.  The listing agreement for the Austin Property shall be amended to indicate that the Trustee and Shore Vista are jointly selling the Austin Property.

   c.  Any sale of the Austin Property is contingent on the written approval of both the Trustee and Shore Vista.

   d.  Any proceeds from the sale of the Austin Property will first be used to satisfy any balance owed to DHLC and the DHLC Investors pursuant to the First Deed of Trust.

   e.  After the First Deed of Trust in favor of DHLC and the DHLC Investors has been satisfied, four hundred and twenty-five thousand dollars ($425,000.00) shall be wired from escrow to the Trustee.

   f.  Any funds remaining after (1) the First Deed of Trust in favor of DHLC and the DHLC Investors has been satisfied and (2) the four hundred and twenty-five thousand dollars ($425,000.00) has been wired to the Trustee shall be distributed to Tennille.

ii).  The Trustee agrees to release Tennille from all claims arising out of the transfer of any and all real and/or personal property related to the Divorce Decree.

iii).  The Trustee agrees to voluntarily dismiss the claims for relief in the Second Amended Complaint against Old Toll and the Colorado Property.

iv).  The Trustee agrees to voluntarily dismiss the claims for relief for alter ego in the Second Amended Complaint against Koba Investments.

v).  In settlement of the claims for relief in the Second Amended Complaint against 5550 Las Vegas, Halverson agrees to avoid the 5550 Las Vegas Transfer (defined above) and transfer any and all interest it holds in 5550 Las Vegas to the bankruptcy estate of William Walter Plise including, but not limited to, all real or personal property owned or controlled by 5550 Las Vegas, all legal and equitable interests owned or controlled by 5550 Las Vegas, all tangible and intangible

- 6 -

property interests owned or controlled by 5550 Las Vegas, or any claims for relief arising under Nevada law or the United States Bankruptcy Code out of the transfer of money from 5550 Las Vegas to third parties. Halverson further agrees to not defend, dispute, object, or assist in any defense of a claim for relief for alter ego brought against 5550 Las Vegas by the Trustee.

vi).    The Trustee agrees to release Halverson from any liability arising under the United States Bankruptcy Code or Nevada law for payments that were made to Halverson from the bank account at Service First Bank of Nevada held in the name of 5550 Las Vegas (Account Number 1020009515). Nothing in this Agreement prevents the Trustee from pursuing any claims for relief arising under the United States Bankruptcy Code or Nevada law against Halverson for conduct unrelated to withdrawals from the bank account at Service First Bank of Nevada held in the name of 5550 Las Vegas (Account Number 1020009515).

## III.    LEGAL ARGUMENT

### A.    The Legal Standard for Approval of Settlement

The Bankruptcy Court may approve a compromise or settlement between a debtor and another party pursuant to Fed. R. Bankr. P. 9019(a), which provides the following:

> Compromise.  On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

FED. R. BANKR. P. 9019(a).

Compromise and settlement agreements have long been an inherent component of the bankruptcy process. The Ninth Circuit recognized that "[t]he bankruptcy court has great latitude in approving compromise agreements." See Woodson v. Fireman's Fund Ins. Co. (In re Woodson), 839 F.2d 610, 620 (9th Cir. 1988).  Accordingly, in approving a settlement, the Court need not conduct an exhaustive investigation of the claims sought to be compromised. See United States v. Alaska National Bank (In re Walsh Constr., Inc.), 669 F.2d 1325, 1328 (9th Cir. 1982).  Rather, it is sufficient that the Court find that the settlement was negotiated in good faith and is reasonable, fair, and equitable. See Martin v. Kane (In re A & C Properties), 784 F.2d 1377, 1381 (9th Cir. 1986), cert. denied, 479 U.S. 854 (1986).  It is within the sound discretion of the bankruptcy court whether to accept or reject a compromise. See In re Carson, 82 B.R. 847 (Bankr. S.D. Ohio 1987).

...

- 7 -

The Ninth Circuit has identified the following factors for consideration in determining whether a settlement is reasonable, fair, and equitable:

> (a) the probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

In re A & C Properties, 784 F.2d at 1381.  The Debtor is not required to satisfy each of these factors as long as the factors as a whole favor approving the settlement.  See In re Pacific Gas & Electric Co., 304 B.R. 395, 416 (Bankr. N.D. Cal. 2004).  In considering the factors, "a precise determination of the likely outcome is not required, since an exact judicial determination of the values at issue would defeat the purpose of compromising the claim." In re Telesphere Comm's, Inc., 179 B.R. 544, 553 (Bankr. N.D. Ill. 1994) (internal quotations omitted).  Thus, rather than determining various issues of fact and law, the Court should "canvass the issues and see whether the settlement fall[s] below the lowest point in the range of reasonableness." In re Lion Capital Group, 49 B.R. 163, 175 (Bankr. S.D.N.Y. 1985) (internal quotations omitted).

**B.     The Settlement Agreement is Fair and Equitable**

       **1.     The Probability of Success in the Litigation**

Plaintiff alleges in the Complaint that the Debtor fraudulently transferred approximately $2,850,000.00 to Tennille as a part of a divorce decree that was used to purchase the Austin Property, which was then fraudulently transferred by Tennille to Shore Vista.  Plaintiff also alleges that the Debtor fraudulently transferred his interest in the Colorado Property to Tennille, which was then fraudulently transferred by Tennille to Old Toll.  Plaintiff seeks to recover the Austin Property and Colorado Property for the benefit of the Debtor's creditors.  Plaintiff further alleges that 5550 Las Vegas and Koba Investments are the alter egos of the Debtor.  Plaintiff believes that she is likely to prevail in the litigation against the Defendants.  However, all of the claims for relief in the Second Amended Complaint against the Defendants are fact-intensive and raise complex legal questions.  As a result, it is difficult to state with much certainty if the Court would conclude that Plaintiffs are entitled to recover the Austin Property and Colorado Property

- 8 -

1    for the benefit of the bankruptcy estate.

2        **2.**    **The Difficulties in Matter of Collection**

3        It is likely that Plaintiff will encounter difficulties in the matter of collection if she is

4    successful in her litigation with the Defendants.  The Austin Property is subject to a first deed of

5    trust in favor of DHLC and the DHLC Investors which has a maturity date of April 1, 2013.

6    Since the Parties would not be prepared for trial until the latter part of 2013, the claims for relief

7    in the Second Amended Complaint would not be resolved prior to the April 1, 2013 maturity

8    date.  Failure to satisfy the first deed of trust would result in DHLC and the DHLC Investors

9    initiating foreclosure proceedings, which would only have the effect of complicating any

10   collection process in the event that the Plaintiff was successful in the litigation.  Moreover, the

11   Colorado Property is vacant land that would be difficult to market and sell.  Thus, the factor of

12   difficulty in collection militates in favor of approving the proposed Settlement Agreement

13   submitted to this Court for approval.

14       **3.**    **The Complexity of the Litigation Involved and the Expense, Inconvenience**
        **and Delay**

15

16       The litigation involved is complex because it involves significant bank records, factual

17   findings, and nuanced legal issues.  The litigation would also involve substantial time and

18   expense because of the evidence that will need to be gathered and analyzed and also because the

19   claims are intensely fact-based and likely will ultimately require a credibility determination from

20   the Court of the parties' veracity and intent in their business relationship.  The delay and expense

21   to litigate the Complaint can be avoided altogether with the resolution provided in the Settlement

22   Agreement.  The Settlement Agreement resolves the Parties' claims to any rights in the Colorado

23   Property, the Austin Property, and includes a release of all claims arising from any transfer made

24   pursuant to the Divorce Decree entered into between the Debtor and Tennille.  To avoid the

25   delay, expense and uncertainty in the litigation, it is the most expeditious, cost effective,

26   convenient and least expensive for the Parties to amicably resolve the issues in the Second

27   Amended Complaint to avoid prolonged litigation.  Thus, this factor militates in favor of an

28   order from this Court approving the proposed Settlement Agreement.

- 9 -

09648-01.001/1036575

1

### 4.    The Paramount Interest of the Creditors

2   The Debtor's Schedule B provides that he only owns personal property in the amount of

3 $4,738.71.  This $4,738.71 figure includes a checking account ($988.71), a personal safe and

4 computer ($250.00), assorted clothing ($250.00), a wedding ring and watch ($1,000.00), a 9mm

5 Glock Pistol ($250.00), and an eighteen foot trailer ($2,000.00).  Schedule C provides that the

6 Debtor is exempting $2,738.71 of the $4,738.71 in assets.  The only item of personal property

7 that was not exempted, the eighteen foot trailer, is secured by a lien equal to its fair market value.

8 Therefore, as of the Petition Date, the Debtor has had a no-asset bankruptcy case.  The proposed

9 Settlement Agreement is in the best interests of the creditors and the Debtor because it will result

10 in the recovery of four hundred twenty-five thousand dollars that can be used for the benefit of

11 creditors.  Accordingly, approval of the Settlement Agreement will result in the recovery of

12 funds that can be distributed to unsecured creditors.

13        **IV.    CONCLUSION**

14   For the foregoing reasons, the Plaintiffs request that the Court approve the proposed

15 Settlement Agreement.

16   Dated this 8th day of March, 2013.

17

18        **COTTON, DRIGGS, WALCH,**
         **HOLLEY, WOLOSON & THOMPSON**

19

20        */s/ Victoria L. Nelson*
         Victoria L. Nelson, Esq. (SBN 5436)

21        Jacob L. Houmand (SBN 12781)
         400 South Fourth Street, Third Floor

22        Las Vegas, Nevada 89101
         Telephone:702/791-0308

23        Facsimile: 702/791-1912

24        *Attorneys for Shelley D. Krohn, Chapter 7*
         *Trustee*

25

26

27

28

09648-01.001/1036575